UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
SIMONE D. COOPER,

                                    Plaintiff,

                 - against -

COMMISSIONER OF SOCIAL
SECURITY,

                                   Defendant.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

20-cv-2824 (BMC)

**COGAN**, District Judge.

       Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not disabled as defined by the Social Security Act for the purpose of receiving disability insurance benefits or supplemental security income. Plaintiff had claimed an onset date of December 31, 2013, and the ALJ's decision is dated April 25, 2019. The ALJ found that plaintiff has a number of severe impairments, none of which except diabetes are relevant to this review proceeding. Despite these impairments, the ALJ also found that plaintiff has the ability to perform sedentary work with various limitations. Those limitations are also not relevant to this proceeding. Rather, the issue before me is the ALJ's evaluation of plaintiff's alleged eye impairment.

       Plaintiff's argument is that the ALJ's failure to adequately recognize her eye conditions compromised the ALJ's analysis at most of the five steps in the sequential analysis. See 20 C.F.R. §§ 404.1520, 416.920. At step two, according to plaintiff, the ALJ erred by not finding that her eye impairment is "severe." In determining plaintiff's residual functional capacity between steps three and four, according to plaintiff, the ALJ erred by not following the treating

physician rule and by improperly weighing plaintiff's testimony on her eye conditions. Finally, plaintiff contends that because the ALJ did not recognize the severity of her eye condition, the hypothetical put to the vocational expert at step five resulted in an erroneous determination of whether there are available jobs in the national economy that she could perform.

I disagree with plaintiff. Aside from her testimony, which I will address below, the medical evidence shows that her eye impairment is benign. Plaintiff occasionally suffers from blurry vision and dry eyes that can result in a burning or itching sensation. But it is apparent on this record that plaintiff's vision is otherwise quite good. Her problem is diabetes – which, as plaintiff acknowledges, the ALJ adequately recognized and addressed – not the occasional vision symptoms of that disease.

There are relatively few medically documented instances of eye problems in the record. Although plaintiff cites her visits to the emergency room, those visits involved her other impairments. At one visit in September 2017, doctors diagnosed hypertension, drug-induced hyperglycemia, and headache. In discharging plaintiff, they instructed her to monitor her blood sugar, and they merely noted that signs of low blood sugar include blurred vision. Similarly, in another visit to the emergency room in March 2018, plaintiff complained of "low blood sugar and left eye vision impair[ment]." Although the doctors found problems with plaintiff's blood sugar, the findings for plaintiff's eyes were negative.[1]

The remaining incidents of eye problems are nowhere near the alleged onset date at the end of 2013. Plaintiff relies most heavily on the records from her treating osteopath, Dr. Eric

---

[1] One confirmed eye problem occurred on February 16, 2018, when plaintiff accidentally splashed some household cleaner in her eye. She saw an ophthalmologist, Dr. Arthur Gerber, whose findings were essentially normal. He gave her prescription eyedrops for the irritation. In June 2018, he wrote a note in connection with plaintiff's disability claim diagnosing "minimal diabetic retinopathy in both eyes."

Shrier, who saw plaintiff three times between July 2018 and January 2019. The vast majority of Dr. Shrier's findings, however, were normal. In the first visit, he noted 20/20 vision in plaintiff's right eye, 20/25 in her left eye, and a normal field of vision. The other findings were normal, save a "mild" background diabetic retinopathy and diabetic macular edema – *i.e.*, there was mild swelling due to an accumulation of fluid in the retina. Likewise, Dr. Shrier's February 6, 2019 medical source statement reflected a diagnosis of "[b]orderline diabetic internal edema" and "[d]ry eye."[2]

On October 23, 2018, plaintiff was examined by Dr. Sherly Abraham. Plaintiff had "c[ome] into [the] clinic with complain[t]s of fatigue and weakness throughout the body," reporting "tingling, numbness, [and] pain in the legs, feet, arms, hands, [and] fingers." Plaintiff also stated that she "went to 2 ophthalmologists" earlier that year and "[w]as told she has slight bleeding in the back of both eyes." Dr. Abraham referred plaintiff for retinal testing, and the results were minor: plaintiff's left eye showed "[n]o diabetic retinopathy," and her right eye had "[m]ild/[m]inimal" retinopathy. Specifically, the exam uncovered "Type 2 diabetes mellitus with mild nonproliferative diabetic retinopathy without macular edema." The report suggested no treatment other than a follow-up examination in six to twelve months.[3]

Thus, the only potentially probative evidence asserted by plaintiff is her own testimony and Dr. Shrier's answers on part of his medical source statement. The portion of Dr. Shrier's

---

[2] Plaintiff argues that there is one statement from Dr. Shrier's medical source statement that supports her case, but for reasons I will discuss below, I do not think the ALJ erred in rejecting that opinion.

Plaintiff also argues that the ALJ failed to recognize that someone can have 20/20 vision and still have blurred vision. I suppose that's true; if a person with 20/20 vision puts on a blindfold, she is no longer going to test 20/20. But the ALJ's obvious point was that plaintiff's occasional blurred vision does not reflect a fundamental or severe impairment separate from her diabetes.

[3] Although plaintiff notes that Dr. Abraham also stated that plaintiff's "disease course has been worsening," that was a reference to plaintiff's diabetes and its related effects, not to any specific vision problems.

medical source statement upon which plaintiff relies is his response to Question 8(a). The introduction to that question appeared as follows:

> "Rarely" means 1% to 5% of an 8-hour working day; "occasionally" means 6% to 33% of an 8-hour working day; "frequently" means 34% to 66% of an 8-hour working day.
>
> 8. As a result of your patient's impairments, estimate your patient's vision limitations if your patient were placed in a competitive work situation.
>
> How often can your patient perform work activities involving the following?

Dr. Shrier made the following notations:

| | Never | Rarely | Occasionally | Frequently | Constantly |
|---|---|---|---|---|---|
| Near Acuity | ☑ | ☐ | ☐ | ☐ | ☐ |
| Far Acuity | ☑ | ☐ | ☐ | ☐ | ☐ |
| Depth Perception | ☑ | ☐ | ☐ | ☐ | ☐ |
| Accommodation | ☑ | ☐ | ☐ | ☐ | ☐ |
| Color Vision | ☑ | ☐ | ☐ | ☐ | ☐ |
| Field of Vision | ☑ | ☐ | ☐ | ☐ | ☐ |

No wonder that plaintiff relies on those answers. If the ALJ accepted them, plaintiff would surely have a severe and disabling level of vision impairment. However, as the ALJ recognized, to interpret Dr. Shrier's checkmarks that way would make Dr. Shrier's answers inconsistent with the remainder of his medical source statement, his treatment records, and the rest of the record.

In light of the remainder of Dr. Shrier's questionnaire answers, interpreting the Question 8(a) answers the way plaintiff does would not make sense. Right below Question 8(a) was Question 8(b): "Is your patient capable of avoiding ordinary hazards in the workplace, such as boxes on the floor, doors ajar, approaching people or vehicles?" Dr. Shrier checked, "Yes." Similarly, Question 8(d) asked: "Can your patient work with small objects such as those

4

involved in doing sedentary work?" Dr. Shrier again checked, "Yes." Question 8(e) asked: "Can your patient work with large objects?" Again, Dr. Shrier checked, "Yes."[4]

Further down, Question 11 asked: "How much is your patient likely to be 'off task'? That is, what percentage of a typical workday would your patient's symptoms likely be severe enough to interfere with attention and concentration needed to perform even simple work tasks?" With a range of checkboxes from "0%" to "25% or more," Dr. Shrier checked "0%." When Question 7 asked to "[d]escribe your patient's visions symptoms," Dr. Shrier didn't even mention retinopathy or blurred vision – he simply listed "[d]ry [e]ye [s]ymptoms ([i]tching, [b]urning)," with a "good" prognosis. Finally, for visual acuity in each eye, Dr. Shrier wrote "20/20" for both eyes and "0" for "any contraction of peripheral visual fields" – *i.e.*, the field of vision.

The ALJ could not reconcile the Question 8(a) answers with the rest of the answers on the questionnaire, and neither can I. If plaintiff can never work on anything close up, far away, requiring depth perception, color vision, or a normal field of vision, then I do not understand how she can also avoid workplace hazards like doors being ajar, people approaching, or objects on the floor. Nor does it make sense that she can work with small objects and large objects, or that she has 20/20 vision and no contraction of her visual field.

If there was support for the Question 8(a) answers in the record, then I might consider whether the ALJ properly considered the treating physician rule and made the other errors that plaintiff asserts. In that case, maybe the Question 8(a) answers would be the right answers and the rest of the questionnaire answers would be in error. But there is nothing in Dr. Shrier's

---

[4] The remaining question, Question 8(c), asked whether plaintiff would have any problem walking up or down stairs, to which Dr. Shrier answered, "No."

records or anywhere else in the record indicating nearsightedness, farsightedness, lack of depth perception, color blindness, or a narrowed field of vision – quite the contrary, this very report, as well as the rest of the record, specifically rejects most of the Question 8(a) answers. As to the other alleged impairments, the absence of any positive findings allows only the inference that plaintiff does not suffer from them, either.

Reconciling the conflicting answers, however, is possible if we consider the strong likelihood that Dr. Shrier simply misread Question 8(a). He may have focused on the preamble to the question – "estimate your patient's vision limitations if your patient were placed in a competitive work situation" – but then skipped over subtitle (a) – asking "[h]ow often can your patient perform work activities" – which flipped the question from a positive to a negative. In other words, Dr. Shrier likely thought he was stating that nearsightedness, farsightedness, depth perception, need for accommodation, color vision, and field of vision would "never" be a limitation in a competitive work environment. If that's what Dr. Shrier meant to say, the Question 8(a) answers would not only lend no support to plaintiff's argument, but also would be the strongest evidence in the record against a finding of disability based on any eye impairment.

I recognize that my perception may be seen as speculative, but if so, that is immaterial. Either Dr. Shrier misread the question as I have suggested, or his answers to it are flatly inconsistent with his other answers and everything else in the record. Either way, the ALJ did not err in failing to give substantial weight to Dr. Shrier's answers to Question 8(a).

That next brings us to plaintiff's argument that the ALJ insufficiently evaluated the credibility of her testimony. She testified:

> A: Yeah, I have diabetic neuropathy in my eyes, because they said now the diabetes is affecting my eyes.
>
> Q: Yeah.

6

> A: And I'm back and forth constantly to the eye doctor. I get a lot of blurred vision, see a lot of, you know, different spots and, you know, shape in the eyes, a lot of pain [in] the back of my eyes.
>
> Q: Okay.
>
> A: The doctor said the left eye is pretty much a – you know, affected. They're looking forward with the – I probably will have to end up getting laser treatment –
>
> Q: Okay.
>
> A: – you know, for my eyes.
>
> . . .
>
> Q: So what kinds of problems does your vision give you? . . .
>
> A: It's my – blurred vision, it's constantly in and out. . . .

Although the ALJ did not reference plaintiff's testimony when concluding that her eye condition did not qualify as a severe impairment, the ALJ did explain more generally how he had considered plaintiff's statements and had concluded that her "allegations that she has a combination of ailments causing her to be unable to work" were "not entirely supported by medical evidence contained in the record."

The primary piece of evidence that plaintiff cites to support her testimony is Dr. Shrier's treatment note from January 7, 2019 – quite late for a claim with an alleged onset date of five years earlier. But plaintiff seems correct that her eye symptoms had worsened somewhat by that date. The treatment note stated that plaintiff's "chief complaint" was a "burning sensation," with the severity listed as "moderate" and the duration listed as "several months." An "associated" condition was "blurred vision" and "slight pain." But Dr. Shrier also noted that the condition "gets better with eye drops," and he specified which eyedrops to order as part of the plan for treatment. Additionally, Dr. Shrier's "impression" was "Retina [clinically significant macular edema] – Diabetic macular edema," but with the severity he ascribed to it was "mild." He

7

continued to describe the condition as "mild" when he filled out the medical source statement the following month.

Therefore, there is no substantial issue with plaintiff's credibility. Her brief testimony that she gets blurred vision "a lot" with "different spots" is too vague to interpret as a contradiction of the medical records. The ALJ did not have to reject plaintiff's credibility to determine that her eye impairments did not rise to a level that made her disabled.

Finally, as is often the case, plaintiff's claim of error in the hypothetical to the vocational expert is derivative of her claim that the ALJ improperly accounted for her eye impairment. Having rejected the substantive basis for her claim, I see no error in the ALJ's phrasing of the hypothetical.

Plaintiff's motion for judgment on the pleadings [16] is denied, and the Commissioner's cross-motion for judgment on the pleadings [19] is granted. The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
       April 18, 2021